IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MARIANA RODRIGUEZ JUAREZ, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 23-2417-KHV |
| | ) | |
| MIDWEST DIVISION – OPRMC, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

On September 15, 2023, Mariana Rodriguez Juarez filed suit against her former employer, Midwest Division – OPRMC, LLC.  Plaintiff asserts claims for sex discrimination (Count I), sexual harassment (Count II) and retaliation (Count III) in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq.  See Pretrial Order (Doc. #44) filed July 31, 2024.  This matter comes before the Court on Overland Park Regional's Motion For Summary Judgment And Brief In Support (Doc. #45) filed July 31, 2024.  For reasons stated below, the Court overrules defendant's motion for summary judgment.

**Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment. Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018). The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative. Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.

**Factual Background**

Initially, the Court addresses defendant's compliance with District of Kansas Local Rule 56.1, which outlines the proper form for addressing an opposing party's statement of material facts. Under this rule, when the non-moving party adds material facts in her response brief, the moving party must respond to the additional material facts in the following manner: "[e]ach fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of [the non-movant]'s

fact that is disputed." D. Kan. Local Rule 56.1(b)(1). If the moving party's reply brief fails to properly address the non-moving party's assertion of fact, the Court may consider the fact undisputed for purposes of the motion. D. Kan. Local Rule 56.1(b)(2); Fed. R. Civ. P. 56(e).

Here, plaintiff asserts 50 additional facts in response to defendant's motion. See Plaintiff's Brief In Opposition To Defendant's Motion For Summary Judgment (Doc. #46) filed August 21, 2024. In its reply, defendant generically addresses plaintiff's facts, stating that they contain "hyperbolic characterizations," "inflammatory buzz words" and "exaggerated freelancing," and are "peppered with . . . colorful language." Defendant's Reply In Support Of Motion For Summary Judgment (Doc. #47) filed September 4, 2024 at 5–9. In eight un-numbered bullet points, defendant provides a few examples of hyperbolic characterizations, occasionally but not always citing the paragraph number of the fact which it is disputing. For plaintiff's facts that defendant does not specifically cite and address with citations to the record, the Court deems those facts undisputed. See D. Kan. Local Rule 56.1(b)(2); Fed. R. Civ. P. 56(e).

The following facts are undisputed or, where disputed, viewed in the light most favorable to plaintiff, the non-movant.

Mariana Rodriguez Juarez is a conservative Hispanic woman and practicing Muslim. Plaintiff is not fully proficient in the English language. For six months, from November 9, 2020 to April 24, 2021, defendant employed plaintiff as a Dietary Assistant in the Food Services department at Overland Park Regional Medical Center ("OPRMC"). In that position, plaintiff's job duties included preparing meals for patients on the trauma floor and intensive care unit, taking meal orders, picking up empty trays from patients and assisting in deliveries to other floors. Plaintiff worked with and had regular contact with three male employees—Michael Word, Ismel Morales and Ian Green. A month into plaintiff's employment, in December of 2020, Word,

Morales and Green began harassing plaintiff. Later in December, however, plaintiff referred a friend to work and also applied for a managerial job in the same department.

I.      **Plaintiff's Interactions With Word, Morales And Green**

Word worked with plaintiff in the Food Services department, preparing and serving food. On unspecified dates over the course of her six-month employment, plaintiff interacted with Word on six occasions. During these interactions, Word (1) questioned plaintiff about her residential address and suggested that he wanted to bring her a gift; (2) gave cookies to plaintiff and told her to think of him while she ate them; (3) physically scanned plaintiff's body and smiled while he served her lunch in the hospital cafeteria; and (4) asked plaintiff's co-worker about her relationship status and suggested that he wanted to be her "sugar daddy." Deposition Of Mariana Rodriguez Juarez (Doc. #45-1) filed July 31, 2024 at 32:1. Plaintiff's co-worker relayed the "sugar daddy" comment to plaintiff. Of the four incidents, Word spoke directly to plaintiff only twice. He never made physical contact with plaintiff. The record does not identify the dates of plaintiff's interactions with Word, i.e. whether they occurred only before she complained to HR on March 11, 2021 or whether they continued after that date.

Morales worked in the Environmental Services department, where his duties included cleaning the hospital. At work, plaintiff saw Morales every day or every other day, but only interacted with him on four or five occasions on unspecified dates over six months. During those interactions, Morales (1) referred to plaintiff as "beautiful" and "sexy;" (2) told her how good she looked in her uniform pants; and (3) waited for her to appear in a secluded area and then told her that he was waiting for her. Id. at 64:15–21. Plaintiff believed that Morales was stalking her. Morales never made physical contact with plaintiff. The record does not identify the dates of

plaintiff's interactions with Morales, i.e. whether they occurred only before she complained to HR on March 11, 2021 or whether they continued after that date.

Defendant employed Green as a Medical Technician. In that role, he assisted the nursing staff on the trauma floor where plaintiff worked. Plaintiff's interactions with Green related generally to patient documentation. These interactions changed, however, when Green learned that plaintiff is Muslim. After that, on some unspecified dates, Green (1) questioned her about not wearing a hijab; (2) inquired about her relationship status, expressing romantic interest; and (3) informed plaintiff that the "best way to get to know a man is to live with a man." Id. at 80:15–16. Plaintiff felt that because she is Muslim, Green stereotyped her as submissive and ready to bear children. Green never made physical contact with plaintiff. The record does not identify the dates of plaintiff's interactions with Green, i.e. whether they occurred only before she complained to HR on March 11, 2021 or whether they continued after that date.

## II.     Plaintiff's Reports To Management And HR

On March 11, 2021, at the urging of her direct supervisor, Emma Hernandez, plaintiff met with OPRMC's Human Resources department to report the behavior of Word, Morales and Green. Plaintiff stopped performing her normal work assignments so that she could go to HR to make her formal complaint. Plaintiff also reported the conduct to the Director of Food Services, Keith Cormier (Hernandez's boss), who managed 42 employees.

When plaintiff met with HR, she spoke with Lisa Siskey (HR Manager) and Sydney Kenney. On March 12, 2021, one day after her meeting, Siskey emailed plaintiff, remarking "I can assure you we want you to feel safe at your workplace." Id. at 141:7–8. Plaintiff responded, "You are wonderful, thank you for the help and reassurance." Id. at 141:18–19. Siskey offered

plaintiff access to various resources, including counseling and time off. At that time, plaintiff felt that HR was addressing her concerns in a prompt and adequate manner.

Defendant had a written sexual harassment policy. The policy required that HR promptly investigate any complaints of discrimination or harassment. The policy did not require that to be actionable, complaints be submitted in writing. Indeed, the policy provided a hot line that employees could call to report sexual harassment. Nevertheless, in the email exchange on March 12, Siskey asked plaintiff to provide a written statement before HR would open an investigation. On March 16 and March 17, Siskey followed up with plaintiff to get a written statement. On March 17, plaintiff informed Siskey that she would try to complete the written statement, but that it was difficult for her to write about what had happened. Plaintiff never provided a written statement. Accordingly, neither Siskey or anyone else in HR opened an investigation, interviewed Word, Morales or Green or imposed any discipline based on plaintiff's reports. The record contains no specific evidence, however, that Word, Morales or Green subjected plaintiff to inappropriate comments after she complained on March 11, 2021.

### III. Events Following Plaintiff's Reports

On some unspecified date following plaintiff's report to HR, Cormier called plaintiff into his office. During that conversation, because Word was about to retire, Cormier tried three times to get plaintiff to withdraw her complaint against him. Dissuading an employee from pursuing charges of discrimination is a violation of defendant's sexual harassment policy.

Given the sexual harassment she was experiencing at work, at some unspecified time after her meeting with Cormier, plaintiff and her mental health counselor felt that she needed to take a leave of absence. Plaintiff wanted to protect herself from further harassment, but also address her related stress and mental health issues. Plaintiff's counselor documented this medical need and

submitted to defendant a leave form entitled "Certification of Health Care Provider for Employee's Serious Health Condition."[1]  On March 23, 2021, plaintiff began a two-week unpaid leave of absence.[2]

On April 5, 2021, plaintiff emailed Hernandez and Cormier, expressing interest in returning to work.  On April 6, 2021, plaintiff's doctor released her to return to work, and she returned to work that same day.  When plaintiff returned, Morales confronted her in a hallway and in reference to her HR complaint, told her "they told me it was you."  Id. at 66:12.  Immediately after this encounter, plaintiff hid in a supply room and called Hernandez in tears to report Morales' confrontation.  The same day, plaintiff reported the confrontation to Siskey.[3]  Plaintiff was extremely distressed that someone had revealed her identity to Morales, and plaintiff informed Siskey that she believed Cormier had disclosed it.

Except for the confrontation with Morales, plaintiff apparently worked without incident for almost two weeks when she returned.[4]  The following week, however, plaintiff missed four of her

---

[1] Neither party provides the exact date that plaintiff submitted her leave request but plaintiff's counselor signed and dated the form on April 5, 2021.  It is therefore unclear whether plaintiff submitted the form to defendant before or after she took her leave of absence.

[2] Shortly before her leave of absence, plaintiff had two disputes with Karen Kelly, a co-worker in her department.  Kelly asked plaintiff to break department rules and raised her voice at plaintiff in front of their co-workers.  Because plaintiff concedes that Kelly's conduct was not sex-based, this dispute is immaterial to plaintiff's claims of sex discrimination and retaliation.

[3] Neither party provides the exact date that Morales confronted plaintiff upon her return to work, or when she reported it to Siskey.

[4] The record contains no evidence of dates when Word, Morales and Green interacted with plaintiff, except that the interactions began in December of 2020 and "continued over the course of her employment."  Here, plaintiff cites just ten direct interactions with Word, Morales and Green over the course of five months.  Therefore, for plaintiff to state that the interactions began in December of 2020 and continued over the course of her employment is too conclusory

(continued. . .)

five scheduled shifts: (1) on April 19, plaintiff felt ill from fasting for Ramadan; (2) on April 20, she left work early for a doctor's appointment; (3) on April 21, her car was vandalized and she did not feel comfortable leaving her apartment; and (4) on April 23, she again felt ill from fasting for Ramadan. The next day, April 24, 2021, plaintiff resigned.

On September 15, 2023, plaintiff filed suit against defendant, asserting claims of sex discrimination, sexual harassment and retaliation. See Complaint (Doc. #1). Plaintiff alleges that in violation of Title VII, (1) Word, Morales and Green subjected her to sexually-charged comments and physically intimidating behavior, which caused her to avoid one-on-one contact with these employees; (2) in violation of defendant's own sexual harassment policies, HR failed to investigate her complaints and Cormier attempted to get plaintiff to withdraw her complaint against Word; (3) because defendant failed to investigate, the harassment continued, which forced plaintiff to take an unpaid leave of absence; and (4) defendant created a hostile work environment that was so severe and pervasive that it impacted her everyday job performance and satisfaction, and forced plaintiff to resign. See Pretrial Order (Doc. #44). Plaintiff also asserts that defendant retaliated against her because she complained of harassment. See id. Although plaintiff asserts sex discrimination and hostile work environment as two separate claims, plaintiff cites the exact same facts in support of each claim and the Court discerns no difference between them.[5] It therefore treats them as a single claim of sex discrimination.

---

[4] (. . .continued)
and general to raise a genuine dispute of material fact whether the misconduct by Word, Morales and Green was "pervasive." Defendant does not seek summary judgment on plaintiff's hostile work environment claim, however, so the Court need not address that issue.

[5] This reading of the pretrial order is informed by the amended complaint, in which "Count I – Sex Discrimination" alleges that plaintiff was "treated differently on the basis of her
(continued. . .)

On July 31, 2024, defendant filed its motion for summary judgment.  See Motion For Summary Judgment (Doc. #45).

## Analysis

**I.     Sex Discrimination**

Defendant seeks summary judgment on plaintiff's Title VII sex discrimination claim, arguing that plaintiff cannot demonstrate adverse employment action and therefore cannot establish a prima facie case.

To establish a prima facie case of sex discrimination, plaintiff must show that (1) she is a member of a protected class; (2) she suffered some harm with respect to an identifiable term or condition of employment; (3) she was qualified for her position; and (4) defendant treated her less favorably than others not in her protected class.  Muldrow v. City of St. Louis, Mo., 601 U.S. 346, 355 (2024); McNellis v. Douglas Cnty. Sch. Dist., 116 F.4th 1122, 1139 (10th Cir. 2024).

Defendant's argument about adverse employment action implicates a recent United States Supreme Court case which clarifies that in a Title VII discrimination case, plaintiff need not establish that she suffered harm which was significant, serious, substantial or any similar adjective. Muldrow v. City of St. Louis, Mo., 601 U.S. 346, 355 (2024).  In Muldrow, a female police officer filed suit against her employer, the St. Louis Police Department, alleging that it transferred her from one job to another because she is a woman.  Id. at 350.  The United States District Court for the Eastern District of Missouri granted the city's motion for summary judgment on plaintiff's sex discrimination claim, holding that as a matter of law, plaintiff's job transfer did not cause a

---

[5] (. . .continued)
gender in that she was subjected to discriminatory acts and unwelcome conduct that had the purpose or effect of substantially interfering with her work performance or creating an intimidating, hostile or offensive work environment."  Amended Complaint (Doc. #3), ¶ 34.

"significant" employment disadvantage to plaintiff. Muldrow v. City of St. Louis, Mo., No. 18-CV-02150-AGF, 2020 WL 5505113, at *8–10 (E.D. Mo. Sept. 11, 2020). The United States Court of Appeals for the Eighth Circuit affirmed. Muldrow v. City of St. Louis, Mo., 30 F.4th 680, 688 (8th Cir. 2022). The United States Supreme Court vacated the judgment of the Eighth Circuit and remanded, holding that when plaintiffs bring suit under Title VII's discrimination prong, they need not show that harm was "significant" or "any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." Muldrow, 601 U.S. at 355. Instead, plaintiffs need only show "some harm" or "some disadvantageous change" with respect to an identifiable term or condition of employment. Id. at 354–55. It held that Title VII's anti-discrimination provision simply "seeks a workplace where individuals are not discriminated against" because of traits such as sex, and "thus flatly prevent[s] injury to individuals based on status, without distinguishing between significant and less significant harms." Id. at 358 (internal citations omitted).

As of yet, the Tenth Circuit has not cited or discussed Muldrow. The extent (if any) to which Muldrow will revolutionize Title VII case law is not yet clear. But it is an important case with important implications for the current dispute. Unfortunately, for purposes of this order, the parties do not share their views on Muldrow or how it impacts the question of adverse employment action. Defendant's opening brief does not mention the case. Plaintiff's opposition and defendant's reply acknowledge the decision but basically have nothing to say about it. Both sides tee up the issues as if Muldrow had never been decided. To further confuse matters, defendant purports to seek summary judgment on the narrow question of adverse employment action (under pre-Muldrow case law) but in a classic example of mission drift, advocates for summary judgment on the merits of plaintiff's claims. Given the state of the record, the Court errs on the side of

holding that defendant is not entitled to judgment as a matter of law on plaintiff's sex discrimination claim.

As noted, defendant seeks summary judgment on plaintiff's sex discrimination claim, arguing that she cannot establish adverse employment action. Plaintiff argues that defendant subjected her to a hostile work environment, which by definition is adverse employment action.

By the time Muldrow was decided, the term "adverse employment action" had become a term of art. That term, and the cases which interpreted it, are not particularly helpful in the post-Muldrow environment. Again, however, defendant does not address Muldrow's impact on this case and cites it only once—in its reply brief. The Court is baffled by defendant's lack of briefing on the dispositive legal standards in this case. The Supreme Court decided Muldrow over six months ago. Several federal and state courts, both district and appellate, in this judicial district and elsewhere, have addressed the new standard of adverse employment action for Title VII discrimination claims. Defendant has not established that it is entitled to judgment as a matter of law **under Muldrow**. The Court therefore overrules defendant's motion. Construing defendant's arguments as best it can, the Court also overrules defendant's motion on the merits.

As explained above, after Muldrow, plaintiff need only show "some harm" or "some disadvantageous change" with respect to an identifiable term or condition of employment. Id. at 354–55. Accordingly, for purposes of plaintiff's sex discrimination claim, the Court must construe defendant's argument that plaintiff cannot show adverse employment action as follows: plaintiff cannot establish that she suffered some harm or some disadvantageous change with respect to an identifiable term or condition of her employment.[6]

---

[6] Prior to Muldrow, the law was well established that to establish a hostile work
(continued. . .)

Plaintiff asserts that she suffered adverse employment action in the form of a hostile work environment.[7]  Plaintiff has presented evidence that (1) three male employees—Word, Morales and Green—made sexually charged comments directed at her; (2) on at least one occasion, Morales waited for plaintiff in a secluded area of the hospital; (3) because of their comments and conduct, plaintiff avoided one-on-one contact with them and was distracted from her normal daily assignments; (4) on at least one occasion, plaintiff hid in a patient's room to avoid harassment from Morales; (5) after plaintiff reported the harassment to HR, Cormier encouraged her to drop her complaint against Word; (6) even though required under defendant's sexual harassment policy, HR never investigated the claims or disciplined Word, Morales or Green;  (7) Morales confronted plaintiff about her HR report and after the confrontation, she hid in a supply closet sobbing; (8) each day, plaintiff felt unsafe and anxious about encountering these three men; and (9) because of the conduct of the three men and HR's lack of remedial action, plaintiff had to take an unpaid mental health leave of absence.

Plaintiff has provided evidence that a hostile work environment impacted her job performance, caused her to avoid one-on-one contact with fellow employees and made her feel

---

[6] (. . .continued) environment on the basis of sex under Title VII, plaintiff must prove that (1) she was discriminated against because of her sex and (2) the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment.  Throupe v. Univ. of Denver, 988 F.3d 1243, 1251 (10th Cir. 2021).  Whether a work environment is hostile is disjunctive, requiring that the harassment be sufficiently pervasive or sufficiently severe to alter the terms, conditions or privileges of plaintiff's employment.  Jackson v. Kansas City Kansas Pub. Sch. Unified Sch. Dist. No. 500, 799 F. App'x 586, 590 (10th Cir. 2020).

[7]  Plaintiff also argues that she suffered adverse employment action when defendant (1) failed to investigate her HR complaints and (2) constructively discharged her.  The Court finds that plaintiff has created a genuine issue of material fact whether she suffered some harm or disadvantageous change with regard to the terms and conditions of her employment.  Therefore, it need not address plaintiff's additional theories of adverse employment action.

anxious and unsafe each day at work. Viewing the above evidence in the light most favorable to plaintiff, a jury could find that defendant subjected plaintiff to some harm with respect to an identifiable term or condition of her employment. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (term of employment to not work in "discriminatorily hostile or abusive environment"); see also Kramer v. Wasatch Cnty. Sheriff's Off., 743 F.3d 726, 743 (10th Cir. 2014) (hostile work environment based on sex alters terms and conditions of employment). Therefore, plaintiff has demonstrated a genuine issue of material fact which is sufficient to defeat defendant's motion for summary judgment. The Court overrules defendant's motion for summary judgment on plaintiff's Title VII sex discrimination claim.

## II.     Retaliation

Defendant seeks summary judgment on plaintiff's retaliation claim under Title VII. Defendant again asserts that because plaintiff cannot demonstrate adverse employment action, she cannot establish a prima facie case.

To establish a prima facie case of retaliation, plaintiff must demonstrate that (1) she engaged in protected opposition to discrimination; (2) she suffered adverse employment action which would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection exists between her protected activity and the adverse action. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); McNellis, 116 F.4th at 1142.

Importantly, Muldrow distinguished adverse employment action in the context of Title VII discrimination claims and adverse employment action in the context of Title VII retaliation claims. Muldrow, 601 U.S. at 357. Though the Supreme Court purported to lower the bar for adverse employment action in discrimination cases, it reaffirmed that in retaliation cases, plaintiff must still show that the retaliatory action caused a "significant" harm, i.e. the employer took action

serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination. Id.; White, 548 U.S. at 68. The Supreme Court drew this distinction based on the purpose behind the two statutory provisions. Muldrow, 601 U.S. at 357. The purpose behind Title VII's anti-retaliation provision was to capture employer actions "serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination," and if an action caused less serious harm, it would not deter Title VII enforcement and thus fell outside the purposes of the ban on retaliation.[8]  Id.

Here, again, defendant fails to address the relevant legal standard. For purposes of plaintiff's retaliation claim, the question is whether plaintiff can establish that she experienced treatment which would have dissuaded a reasonable worker from making or supporting a claim of discrimination.

As noted, plaintiff asserts that in retaliation for her HR complaints, defendant subjected her to a hostile work environment.[9] Plaintiff has presented evidence that (1) defendant had a written sexual harassment policy which required HR to promptly investigate complaints of harassment, whether made in writing or not; (2) defendant took no action to investigate plaintiff's complaints against Word, Morales and Green; (3) Cormier (the director of her department) attempted to convince her to withdraw her complaint against Word because he was about to retire; (4) because

---

[8]  In Muldrow, the Supreme Court characterized this reasoning as "frankly extra-textual," perhaps signaling future re-examination of that standard.

[9]  For her retaliation claim, plaintiff again claims adverse employment action in the form of defendant's failure to investigate her HR complaints and constructive discharge. Again, because the Court finds below that plaintiff has cited evidence which creates a genuine issue of material fact whether the hostile work environment would have dissuaded a reasonable employee from further engaging in protected activity, the Court need not reach the merits of plaintiff's other theories of adverse employment action.

of the continued harassment, plaintiff had to take a leave of absence to protect herself; (5) upon her return, Morales confronted her in a hallway, telling her "they told me it was you," and following that encounter, plaintiff hid in a supply room crying; (6) plaintiff reported this confrontation to HR and again, it took no action; and (7) because of the conduct of the three men and HR's lack of remedial action, plaintiff resigned.

Viewing this evidence in the light most favorable to plaintiff, plaintiff has demonstrated a genuine dispute of material fact whether defendant's conduct would have dissuaded a reasonable employee from further engaging in protected activity. Defendant has not shown that plaintiff cannot establish "adverse employment action" under the relevant legal standard and therefore the Court overrules defendant's motion for summary judgment on plaintiff's Title VII retaliation claim.

**IT IS THEREFORE ORDERED** that Overland Park Regional's Motion For Summary Judgment And Brief In Support (Doc. #45) filed July 31, 2024 is **OVERRULED.**

Dated this 5th day of November, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge