IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MARIANA RODRIGUEZ JUAREZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 23-2417-KHV |
| | ) | |
| **MIDWEST DIVISION – OPRMC, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on <u>Defendant Overland Park Regional's Renewed Motion For Judgment As A Matter Of Law, Motion For New Trial, Or To Alter Or Amend The Judgment</u> (Doc. #90) filed February 12, 2025 and <u>Plaintiffs' Renewed And Amended Motion For An Award Of Attorney's Fees And Litigation Expenses</u> (Doc. #92) filed February 27, 2025.  For reasons stated below, the Court overrules defendant's motion and sustains plaintiffs' motion in part.

**I.    Defendant's Motion[1]**

   A.    <u>Renewed Motion For Judgment As A Matter Of Law</u>

Defendant is entitled to judgment as a matter of law only if all the evidence, viewed in the light most favorable to plaintiff, reveals no legally sufficient evidentiary basis to find for plaintiff. See <u>Burrell v. Armijo</u>, 603 F.3d 825, 832 (10th Cir. 2010).  Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences to support plaintiff.  See <u>Baty v. Willamette Indus., Inc.</u>, 172 F.3d 1232, 1241 (10th Cir. 1999); <u>Riggs v. Scrivner, Inc.</u>, 927 F.2d 1146, 1149 (10th Cir. 1991).  Such judgment is proper only when

---

[1]    Defendant requests that the Court set this motion for oral argument.  Because the Court has already addressed defendant's arguments, the Court declines to do so.

"the evidence so strongly supports an issue that reasonable minds could not differ." Ryder v. City of Topeka, 814 F.2d 1412, 1418 (10th Cir. 1987). Courts should "cautiously and sparingly" grant judgment as a matter of law under Rule 50(b), Fed. R. Civ. P. Zuchel v. City & Cnty. of Denver, 997 F.2d 730, 734 (10th Cir. 1993).

In determining whether to grant judgment as a matter of law, the Court may not weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury. See Lucas v. Dover Corp., 857 F.2d 1397, 1400 (10th Cir. 1988). Nevertheless, the Court must find more than a mere scintilla of evidence favoring plaintiff; it must find that "evidence was before the jury upon which it could properly find against [defendant]." Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1547 (10th Cir. 1988).

Defendant argues that the evidence presented at trial was insufficient to allow a reasonable jury to find for plaintiff on her claim for hostile work environment and lost wage damages stemming from her alleged constructive discharge.

On January 14, 2025, at the close of plaintiff's evidence at trial, defendant moved for judgment as a matter of law. See Defendant Overland Park Regional's Motion For Judgment As A Matter Of Law (Doc. #83). The Court overruled defendant's motion. See Order (Doc. #87) filed January 15, 2025. Defendant now renews its motion.

For substantially the same reasons it overruled defendant's original motion, and those stated in plaintiff's Memorandum In Opposition To Defendant's Renewed Motion For Judgment As A Matter Of Law, For A New Trial, Or To Alter Or Amend The Judgment (Doc. #94) filed March 5, 2025, the Court overrules defendant's renewed motion for judgment as a matter of law. Based on the evidence presented at trial, the jury could reasonably conclude that defendant subjected plaintiff to a hostile work environment and constructively discharged her in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and award her back pay accordingly.

B.  Motion For A New Trial

Pursuant to Rule 59, Fed. R. Civ. P., the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). In deciding whether to grant a motion for new trial, the Court exercises broad discretion. See Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1194 (10th Cir. 1997). The Court generally regards motions for new trial with disfavor and grants them only with great caution. See Franklin v. Thompson, 981 F.2d 1168, 1171 (10th Cir. 1992); Utility Trailer Sales of Kansas City, Inc. v. MAC Trailer Mfg., Inc., 734 F. Supp. 2d 1210, 1216 (D. Kan. 2010). The party seeking to set aside a jury verdict must demonstrate prejudicial trial error or that the verdict is not based on substantial evidence. Anderson v. Phillips Petroleum Co., 861 F.2d 631, 637 (10th Cir. 1988), overruled on other grounds, Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993); White v. Conoco, Inc., 710 F.2d 1442, 1443 (10th Cir. 1983). In reviewing a motion for new trial, the Court views the evidence in the light most favorable to the prevailing party. See Griffin v. Strong, 983 F.3d 1544, 1546 (10th Cir. 1993). The Court ignores errors that do not affect the essential fairness of the trial. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 553 (1984).

Defendant argues that the evidence presented at trial was insufficient to allow a reasonable jury to find for plaintiff on her claim for hostile work environment and lost wage damages stemming from her alleged constructive discharge. Defendant Overland Park Regional's Renewed Motion For Judgment As A Matter Of Law, Motion For New Trial, Or To Alter Or Amend The Judgment (Doc. #90) at 29. In addition, defendant argues that the Court committed prejudicial error by allowing the jury to hear evidence regarding the alleged "sugar daddy" comment, because

such evidence constitutes two levels of hearsay.  Id.

### 1. Hostile Work Environment

Defendant argues that as a matter of law, plaintiff did not establish the elements necessary for her hostile work environment claim.  Specifically, defendant argues that (1) other than the sugar daddy comment, which defendant argues the Court should have excluded as hearsay, plaintiff did not present any evidence that the men did or said anything sex-based or offensive to the point of creating an abusive work environment and (2) after plaintiff went to Human Resources on March 11, 2021, the alleged harassment stopped.  Defendant further argues that plaintiff did not present evidence to render defendant liable for any alleged harassment because (1) plaintiff admitted that after the March 11 meeting, she had no further issues with the men, (2) plaintiff did not provide HR with further information that might allow them to identify the man she was incorrectly referring to as "Manuel" and (3) the record contains no evidence that HR acted negligently in response to plaintiff's complaints.

At trial, plaintiff testified about multiple interactions that could be considered sex-based and offensive, such as (1) Mr. Word baking her a special batch of cookies that she did not ask for and saying "I want you to think about me when you eat these cookies," Transcript Of Jury Trial Volume 1 (Doc. #103) filed April 2, 2025 at 41, (2) Mr. Morales confronting her in a patient hallway after she made a sexual harassment complaint against him, Id. at 68, (3) Mr. Morales telling plaintiff she is "so sexy" and that "those pants look good on [her]," Id. at 113–14, (4) Mr. Morales asking plaintiff where she lives "exactly" and telling her he wants to bring her "something special," Id. at 121 and (5) Mr. Word looking her up and down with a smirk, as if he liked what he saw, Id. at 40.  Plaintiff also testified that after the March 11 meeting, she did in fact have another interaction with Mr. Morales.  Defendant and plaintiff presented conflicting evidence regarding

the timeline of the March 11 meeting and plaintiff's final interaction with Mr. Morales, but the jury could have credited plaintiff's testimony that the encounter happened after the meeting. Further, plaintiff's supervisor testified that plaintiff's complaints warranted a full-blown investigation. Transcript Of Jury Trial Volume 2 (Doc. #104) filed April 2, 2025 at 197. The jury had substantial evidence on which to find in favor of plaintiff on her hostile work environment claim.

As to defendant's liability, as discussed above, plaintiff presented evidence that (1) the harassment did not end after the March 11 meeting, (2) her supervisor tried to discourage her from reporting the harassment and (3) her supervisor disclosed her identity to Mr. Morales. Defendant did not offer proof of its alleged investigation or remedial or preventative action. The jury's finding of liability was therefore based on substantial evidence.

### 2. Constructive Discharge

Defendant also argues that plaintiff did not establish her constructive discharge claim because (1) nothing about plaintiff's work environment was intolerable or nearly impossible, (2) after the March 11 meeting, plaintiff had no further issues with Mr. Word or Mr. Green and (3) the single incident with Mr. Morales after March 11 did not have a material impact on plaintiff because she did not communicate about it with HR, Emma Hernandez or Keith Cormier.

In addition to the incidents mentioned above, plaintiff testified that (1) she feared for her safety at work and on two occasions felt that she had to seclude herself in isolated areas of the hospital to avoid harassment, (2) the fact that Mr. Cormier tried to dissuade her from pursuing a complaint reenforced her conclusion that HR had dropped the ball and so she had to resign and (3) HR did not take action to stop the harassment. The jury's finding in favor of plaintiff on her constructive discharge claim was based on substantial evidence.

### 3. Lost Wages

Defendant also argues that plaintiff did not present sufficient evidence to support the jury award of $50,000 for lost wages, and therefore the Court should amend the judgment to enter judgment in defendant's favor or excise the lost wages portion of the judgment. Specifically, defendant argues that plaintiff never explained how she arrived at the figure, that she made some interim wages from other jobs and that she failed to mitigate her damages.

Plaintiff, however, testified that her lost income was $77,000 and that she performed "odd jobs" while attempting to ger her photography business off the ground. Transcript Of Jury Trial Volume 1 (Doc. #103) at 79. While she did not offer exact math, she asked the jury to award her $50,000 in back pay. Defendant did not present any evidence that $50,000 does not accurately reflect plaintiff's lost income less income she earned from odd jobs. The jury's award of $50,000 in back pay was therefore based on substantial evidence.

### 4. Sugar Daddy Comment

Plaintiff testified that her coworker, Theresa Patterson, "came up to [plaintiff] and said that Michael Word had been inquiring about [plaintiff's] relationship status to her and that if [plaintiff] wanted him to be [plaintiff's] sugar daddy." Transcript Of Jury Trial Volume 1 (Doc. #103) at 42. Defendant did not raise this comment in its motions in limine, but defendant did raise it to the Court outside the presence of the jury, and the Court and parties agreed to further address it if it came up in evidence. Id. at 4. During evidence, plaintiff began to testify about the comment, and defendant raised a hearsay objection, arguing that the statement was being offered for the truth of the matter asserted—the truth of Theresa Patterson's statement that Mr. Word actually made the comment. Id. at 41. The Court questioned whether it mattered whether Mr. Word actually made the comment, stating that "[i]f it doesn't matter whether he actually said it . . . we're just admitting

to show the effect on [plaintiff]." Id. Defendant's counsel stated that his "issue would be that Ms. Patterson is not going to be a witness in this case, so [defendant] can't examine her about whether or not this is true, this comment was actually made." Id. at 42. The Court then overruled defendant's hearsay objection.

Because plaintiff did not offer the comment for the truth of the matter implicitly asserted, i.e. that Mr. Word wanted to be plaintiff's sugar daddy, it is not hearsay. United States v. Smalls, 605 F.3d 765, 780 (10th Cir. 2010) (hearsay defined as out-of-court statement offered to prove truth of matter asserted). Plaintiff did not offer the comment to show that Mr. Word wanted a sexual arrangement with plaintiff or even to show that Mr. Word truly made the comment. Rather, she offered the evidence to show how hearing about the alleged comment—whether Mr. Word actually said it or not—affected her, which falls under a hearsay exception. See United States v. Twitty, 689 F. App'x 890, 895 (10th Cir. 2017) (evidence offered to show effect on listener not hearsay). Therefore, the Court did not commit prejudicial error in allowing the jury to hear the evidence.

Because the jury's verdict was based on substantial evidence and the Court did not commit prejudicial error which materially affected the verdict, the Court overrules defendant's motion for a new trial.

C. Motion To Alter Or Amend The Judgment

Under Rule 59(e), Fed. R. Civ. P., a party may request that the Court alter or amend the judgment following its entry. Fed. R. Civ. P. 59(e). The Court has discretion whether to grant or deny a motion to alter or amend the judgment. See Hancock v. City of Okla. City, 857 F.2d 1394, 1395 (10th Cir. 1988). A motion to alter or amend is essentially a motion for reconsideration. Hilst v. Bowen, 874 F.2d 725, 726 (10th Cir. 1989); Koch v. Shell Oil Co., 911 F. Supp. 487, 489

(D. Kan. 1996).

The Court may recognize any one of three grounds justifying reconsideration: an intervening change in controlling law, availability of new evidence or the need to correct clear error or prevent manifest injustice. See Major v. Benton, 647 F.2d 110, 112 (10th Cir. 1981); Burnett v. W. Res., Inc., 929 F. Supp. 1349, 1360 (D. Kan. 1996). A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed. See Voelkel v. Gen. Motors Corp., 846 F. Supp. 1482, 1483 (D. Kan.), aff'd, 43 F.3d 1484 (10th Cir. 1994). Such motions are not appropriate if the movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that it could have presented originally. See Van Skiver v. U.S., 952 F.2d 1241, 1243 (10th Cir. 1991).

Defendant has not alleged an intervening change in controlling law, availability of new evidence or manifest injustice. As discussed above, the Court did not clearly err, and the jury verdict was based on substantial evidence presented at trial. Accordingly, the Court overrules Defendant Overland Park Regional's Renewed Motion For Judgment As A Matter Of Law, Motion For New Trial, Or To Alter Or Amend The Judgment (Doc. #90) and turns to plaintiff's motion for attorney fees and costs as the prevailing party.

**II.     Plaintiff's Motion For Attorney Fees And Costs**

Plaintiff seeks $448,286.16 in attorney fees and $2,850.47 in litigation expenses. In an action under Title VII, the Court has discretion to award the prevailing party reasonable attorney fees. 42 U.S.C. § 2000e–5(k). To obtain attorney fees, plaintiff must prove that (1) she was the prevailing party and (2) her fee request is reasonable. Flitton v. Primary Residential Mortg., Inc., 614 F.3d 1173, 1176 (10th Cir. 2010). To meet her burden, plaintiff must "prove and establish the

reasonableness of each dollar, each hour, above zero." Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995).

The Court has discretion to determine the amount of an award of attorney fees. Carter v. Sedgwick Cnty., Kan., 36 F.3d 952, 956 (10th Cir. 1994). To determine whether a fee request is reasonable, the Court first calculates the lodestar amount by multiplying by a reasonable hourly rate the hours that counsel reasonably spent litigating. Flitton v. Primary Residential Mortg., Inc., 614 F.3d 1173, 1176 (10th Cir. 2010). The Court has discretion to reduce the number of compensable hours if it determines that the claimed time spent is excessive, and the Court may set a reasonable hourly rate. Carter v. Sedgwick Cnty., Kan., 36 F.3d 952, 956 (10th Cir. 1994). The Court may also reduce the award based on "redundant, excessive, or improperly billed hours, or based on the attorneys' limited success in the case." Zisumbo v. Ogden Reg'l Med. Ctr., 801 F.3d 1185, 1207 (10th Cir. 2015).

Plaintiff requests fees for 804.7 hours of work split among three attorneys and three legal assistants at the following hourly rates: $800 for Mr. Carter, $675 for Mr. McCoy, $425 for Ms. Duggan and $150 for legal assistants. In support, plaintiff has submitted the affidavits of counsel Douglas L. Carter, Jonathan K. McCoy and Sarah J. Duggan; affidavits of attorneys Martin M. Meyers, Kevin Baldwin, Mark A. Jess, Phillip M. Murphy II, Katherine R. Myers, Diane Peters and John Jones IV; declaration of client of Law Offices of Douglas L. Carter, P.C., William A. O'Connor; billing statement for time performed by the Law Offices of Douglas L. Carter, P.C; billing statement for time performed by Brown Curry & Duggan, LLC; judgment entered in Khoshneviszadeh v. Sam's West, Inc., Jackson County Circuit Court Case No. 2116-CV25207; final judgment entered in Williams v. City of Kansas City, Missouri, Jackson County Circuit Court Case No. 2016-CV12544; judgment for attorney fees entered in Hines v. Blessed Homes, Jackson

County Circuit Court Case No. 2216-CV20041; and the Missouri Lawyers Media report on billing rates as of November of 2023.

A.  Reasonable Hours

The first step in calculating the lodestar is to determine the number of hours that plaintiff's counsel reasonably expended on the litigation. Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan., 157 F.3d 1243, 1249 (10th Cir. 1998). Work is reasonable if it is "useful and of a type ordinarily necessary to secure the final result obtained." Johnson v. City of Tulsa, Okla., 489 F.3d 1089, 1107 (10th Cir. 2007) (citation omitted). In reviewing whether the hours are necessary, the Court considers the following factors: "(1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers." Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998) (citation and internal quotation marks omitted).

As noted, plaintiff requests fees for 804.7 hours of work between three attorneys and three legal assistants from two firms. Defendant argues that the number of hours plaintiff's counsel expended in this case is unreasonable. Specifically, defendant argues that plaintiff overstaffed the case which resulted in duplicative time and excessive hours. While it is not per se unreasonable to have many timekeepers on a case, the Court carefully reviews whether the number of timekeepers on a case implicates potential inefficiencies. M.B. v. Howard, 555 F. Supp. 3d 1047, 1076 (D. Kan. 2021). Indeed, in cases staffed with multiple attorneys across distinct organizations, inherent inefficiencies arise. Id. at 1077 (reducing plaintiffs' hours given inherent inefficiencies of 25 attorneys across five organizations).

As to the third factor—the complexity of the case—this case was not complex.  It was a standard, single-plaintiff Title VII case that did not involve complex or novel legal issues and lasted a little over one year.  See e.g., Reazin v. Blue Cross & Blue Shield of Kansas, Inc., 663 F. Supp. 1360, 1452 (D. Kan. 1987), aff'd and remanded, 899 F.2d 951 (10th Cir. 1990) (reasonable that attorneys billed over 15,000 hours when litigation involved complex issues raised in context of complex and rapidly changing industry).  Trial was simple—it lasted two and a half days, the parties called five witnesses, the parties stipulated to all exhibits and witnesses and neither party offered expert witnesses.  The discovery proceedings were also typical—one set of written requests for each party and four depositions.  Neither party filed a motion to compel discovery.

As to the fifth factor—the responses necessitated by the maneuvering of the other side—defendant did not maneuver in a way that would necessitate plaintiff's counsel performing more work than typically required for a case of this nature.  Defendant did not file a motion to compel discovery, offer expert witnesses or object to any exhibit or witness.  See e.g., Fox v. Pittsburg State Univ., 258 F. Supp. 3d 1243, 1264 (D. Kan. 2017) (approving higher than expected amount due to defendant's behavior in running up substantial fees with inordinate discovery requests, multiple motions to compel, expert testimony, 36 motion in limine objections, 20 witnesses and numerous objections).

As to the sixth factor—potential duplication of services by multiple lawyers—plaintiff's billing statements show that at times, Mr. McCoy and Ms. Duggan engaged in the same tasks such as both drafting discovery requests, meeting with plaintiff to discuss Rule 26 disclosures and meeting with plaintiff to prepare for mediation, which shows duplication of services by multiple lawyers.

Calculating reasonable hours can be a "herculean task," so the Court is not required to identify and justify each disallowed hour and may arrive at a reasonable number of hours through a general reduction of hours claimed. Wirtz v. Kansas Farm Bureau Servs., Inc., 355 F. Supp. 2d 1190, 1197 (D. Kan. 2005) (citing Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1202 (10th Cir.1986)). Due to the simplicity of plaintiff's claims and discovery, the length of trial and litigation, defendant's reasonable maneuvering, the duplication of services by multiple lawyers and plaintiff staffing three attorneys on this case when defendant only staffed two, the Court exercises its discretion and reduces plaintiff's total number of hours by 33 per cent, for a sum of 558.24 hours.

B.  Reasonable Rate

Having established the reasonableness of the requested hours, the next step in calculating the lodestar is to determine the reasonable hourly rates for counsel. To determine whether billing rates are reasonable, the Court establishes a rate for each lawyer based upon the norm for comparable private firm lawyers in the area, which the Court calculates at the time of the fee award. Fish v. Kobach, No. 16-2105-JAR, 2018 WL 3647132, at *6 (D. Kan. Aug. 1, 2018). A reasonable hourly rate comports with those "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. (citations omitted). The District of Kansas and the Kansas City metropolitan area comprise the relevant community for determining reasonable market rates. Fox, 258 F. Supp. at 1264 (relevant market is place where litigation occurs).

Plaintiff seeks an hourly billing rate of $800 for Mr. Carter, $675 for Mr. McCoy, $425 for Ms. Duggan and $150 for legal assistants. Defendant argues that these rates are not reasonable. Specifically, defendant points out that in three separate cases in January, February and April of

2024, courts approved hourly rates of $725 for Mr. Carter, $575 for Mr. McCoy and $350 for Ms. Duggan.  Plaintiff's counsel now seeks rates which are between ten and 22 per cent higher than rates which courts approved for them less than one year ago, and they do not explain the increase.  Indeed, the inflation rate in the United States for the past year was only 2.8 per cent.  Exhibit C (Doc. #96-3) filed March 14, 2025.  Accordingly, the Court adopts hourly rates reflecting the recently approved rates plus 2.8 per cent to account for inflation: $745.30 for Mr. Carter, $591.10 for Mr. McCoy and $359.80 for Ms. Duggan.

    C.    Lodestar Calculation

The Court calculates the lodestar as follows:

| Plaintiff's Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Doug Carter | 114.66 | $745.30 | $88,458.93 |
| John McCoy | 227.24 | $591.10 | $134,319.91 |
| Sarah Duggan | 134.84 | $359.80 | $48,514.53 |
| Sarah Williams | 53.40 | $150.00 | $8,009.85 |
| Steve Hamilton | 8.71 | $150.00 | $1,306.50 |
| Tina Carter | 19.40 | $150.00 | $2,909.48 |
| **Total** | | | **$280,519.20** |

The lodestar amount is therefore $280,519.20.

    D.    Adjustment Of Lodestar

The lodestar figure includes "most, if not all, of the relevant factors constituting a reasonable attorney's fee," and therefore the lodestar is a presumptively reasonable fee.  Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010) (citations omitted).  Accordingly, the Court can only adjust the lodestar figure in rare circumstance where it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  Id.; see Anchondo v.

Anderson, Crenshaw & Assocs., L.L.C., 616 F.3d 1098, 1102 (10th Cir. 2010).  In considering whether to adjust the lodestar, courts typically consider the following:

> (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989).

Plaintiff brought claims of sex discrimination, hostile work environment and retaliation, and requested punitive damages.  At trial, the jury found for plaintiff on her hostile work environment claim and awarded her lost wages of $50,000 plus $100,000 for emotional distress.  The jury found for defendant on plaintiff's claims for sex discrimination and retaliation, and it did not award punitive damages.

Plaintiff does not request a departure from the lodestar.  Defendant, however, requests a downward adjustment of 20 per cent, arguing that under the eighth Johnson factor, the amount of fees requested is not proportional to plaintiff's award.  Defendant relies on the fact that plaintiff was only successful on one of her three claims and asserts that her award was not substantial.  If plaintiff presents multiple related claims, however, the fact that she did not prevail on some claims does not preclude her from fully recovering her attorney's fees if she achieved success on an interrelated claim.  Flitton v. Primary Residential Mortg., Inc., 614 F.3d 1173, 1177 (10th Cir. 2010).  In the context of fee awards, "claims are related if they are based on a common core of facts or are based on related legal theories."  Id.

Here, plaintiff's three claims were based on the same facts, and the three legal theories were closely related, so her claims are related. The jury awarded plaintiff 100 per cent of her economic loss plus twice that sum for emotional loss. Accordingly, the Court declines to reduce the lodestar.

E.     Litigation Expenses

In addition to attorney fees, the prevailing party is entitled to recover reasonable expenses that are usually itemized and billed separately, as long as the expenses are reasonable. See Sussman v. Patterson, 108 F.3d 1206, 1213 (10th Cir. 1997). Plaintiff requests $2,850.47 in non-taxable litigation expenses. Defendant does not challenge this request.

Accordingly, the Court sustains plaintiff's motion for non-taxable litigation expenses and awards her $2,850.47 in non-taxable costs.

**IT IS THEREFORE ORDERED** that Defendant Overland Park Regional's Renewed Motion For Judgment As A Matter Of Law, Motion For New Trial, Or To Alter Or Amend The Judgment (Doc. #90) filed February 12, 2025 is **OVERRULED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Renewed And Amended Motion For An Award Of Attorney's Fees And Litigation Expenses (Doc. #92) filed February 27, 2025 is **SUSTAINED in part** and **OVERRULED in part. Defendant Overland Park Regional Medical Center, LLC shall pay plaintiff $280,519.20 in attorney fees and $2,850.47 in non-taxable expenses. The Court directs the Clerk to enter judgment for the awarded amount in attorney fees and costs.**

Dated this 7th day of April, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
